1:06CV1939

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

JUDGE GAUGHAN

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| BLUE CHIP IR GROUP, LTD., ) | Case No. 2:06CV185 DS |
| Plaintiff, ) | |
| vs. ) | MEMORANDUM OPINION |
| ) | AND ORDER ADDRESSING |
| DOUGLAS FURTH and WILSON-DAVIS ) | DEFENDANT'S MOTION |
| & CO., ) | TO DISMISS OR TRANSFER |
| Defendants. ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. INTRODUCTION

The Plaintiff, Blue Chip IR Group, LTD ("Blue Chip") is a Nevada limited liability company doing business in Utah. Blue Chip is a shareholder in Ever-Glory International Group, Inc. ("EGLY"), a publicly traded company with securities registered with the SEC. Defendant Furth, a "financial public relations specialist," entered into an agreement with Blue Chip in which Furth was to purchase EGLY shares as well as use his expertise to open new markets for EGLY shares, increasing share value. Blue Chip would compensate Furth by transferring 175,000 EGLY shares to Furth in an account at Wilson-Davis & Co., located in Salt Lake City, Utah. Blue Chip alleges that Furth has or intends to violate applicable security laws by artificially manipulating the volume and price for EGLY shares.

hereby certify that the annexed is a true and correct copy of a document or an electronic docket entry on file at the United States District Court for the District of Utah.
# of pages  8
Date: 8-11-06
MARKUS B. ZIMMER, Clerk
By: [signature]
Deputy Clerk

Dockets.Justia.com

Upon learning of Furth's alleged illegal activities, Blue Chip demanded that he immediately cease any activities regarding Blue Chip and return all EGLY shares. Wilson-Davis froze Furth's account, which resulted in Furth filing suit in the Northern District of Ohio on February 22, 2006. On February 23, 2006, Blue Chip filed suit in the Utah State District Court, alleging common law fraud, breach of contract, securities fraud, and requesting declaratory relief and injunctive relief. On March 1, 2006 Furth amended his complaint in Ohio and included Blue Chip as a defendant. On March 1, 2006 Furth removed the plaintiff's claims to this court. In April 2006 Furth filed this Motion to Dismiss or, in the Alternative, to Transfer Venue to the Northern District of Ohio. Blue Chip has moved to strike the Motion to Dismiss or Transfer, on the grounds that these pleadings were drafted and filed with the Court not by Mr. Furth appearing *pro se* as represented thereon, but rather by the firm of Levin & Associates, Co., L.P.A.

## II. PLAINTIFF'S MOTION TO STRIKE THE PLEADINGS

The Court will first address Plaintiff's Motion to Strike the pleadings. This Court rejects as inappropriate the practice of ghost writing for a purportedly *pro se* litigant. During the March 15, 2006 hearing Mr. Levine was ordered to file a Notice of Appearance in compliance with the rules of the this Court if he intended to continue to appear. As of the filing of this motion, Mr. Levine had not entered such a notice.

The Court, however, denies Plaintiff's Motion to Strike for the following reasons. First, there appears to be no intent to deceive the Court or the parties, nor was there any actual deception, since the parties were aware that Mr. Levine would be conducting substantive work on

2

Mr. Furth's behalf. Second, Mr. Levine's law firm has recognized that ghost writing is inappropriate and has apologized for its conduct. Moreover, Mr. Furth has retained local counsel, and that counsel has sought *pro hac vice* admission for Mr. Levine and Mr. Aparesh Paul of Levine's law firm. As there has been no prejudice to Plaintiff, the Court will not impose sanctions at this time; however, any future violations will result in sanctions.

### III. DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF OHIO

Defendant Furth has moved to dismiss, or in the alternative, to transfer venue to the Northern District of Ohio. Clearly this Court does not have general personal jurisdiction over Mr. Furth, so the only question is whether specific personal jurisdiction exists. When a motion to dismiss for lack of jurisdiction is presented prior to trial, "the plaintiff's burden is relatively light." *STV International Marketing v. Cannondale Corporation*, 750 F.Supp. 1070, 1073 (D. Utah 1990). The "plaintiff need only make a prima facie showing." *Frontier Fed. Sav. & Loan v. National Hotel Corp.*, 675 F.Supp. 1293, 1295-6 (D. Utah 1987). If conflicting affidavits are presented, all factual disputes should be resolved in favor of the plaintiff.

In a diversity action, a federal court must look to the law of the forum state to determine the issue of personal jurisdiction. *Yarbrough v. Elmer Bunker & Assoc.*, 669 F.2d 614 (10th Cir. 1982). Under Utah law, "a three-part inquiry is used to determine whether specific jurisdiction exists: (1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and defendant's acts or contacts; (3)

3

application of the Utah long-arm statute must satisfy the requirements of federal due process."
*Harnischfeger v. Uniflo*, 883 F.Supp. 608, 612-613 (D. Utah 1995).

The Utah long-arm statute provides in pertinent part:

> Any person . . . whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising therefrom:
> (1) the transaction of any business within this state;
> . . . .
> (3) the causing of any injury within this state whether tortious or by breach of warranty.

The Court finds that Blue Chip has failed to present sufficient facts to make a prima facie showing that Mr. Furth transacted business or caused tortious injury within the state of Utah.

**A. Blue Chip has not made a sufficient showing that Furth transacted business in Utah.**

Blue Chips' entire argument that Mr. Furth transacted business in Utah seems to rest on the fact that Blue Chip deposited 175,000 shares of EGLY stock for Mr. Furth in a brokerage account at Wilson-Davis & Co., a Utah Corporation. While Blue Chip does assert for the first time in its Memorandum that Mr. Furth engaged in matched trades "from the state of Utah," it provides no factual support for this assertion from the complaint or the affidavits.

Blue Chip makes numerous unsupported allegations, such as, "Furth's tortious activity was deliberately directed at Plaintiff in relation to the shares held by WDCO in Utah," "[t]he ultimate effect of Defendant's actions was directly and efficaciously aimed at causing injury to Blue Chip in Utah and, in fact, had its desired effect," and "[t]he Defendant purposefully directed his activities at Utah." Blue Chip does not tell the Court specifically what activities were directed at Utah or what injuries were sustained.

The Court is required to resolve factual disputes in Plaintiff's favor, but only when the parties present conflicting affidavits. Here, Furth has made a number of allegations that are

4

uncontradicted and do not conflict with Blue Chip's affidavits. Furth avers in his affidavits that he performed all of his obligations under the contract in Ohio. Blue Chip provides no contrary factual allegations, let alone any assertion that the contractual obligations were performed in Utah. Furth also avers, again without contradiction, that he wanted to open an account somewhere else but was informed that he had no choice and was compelled to open the account in Utah. Finally, Furth alleges, and Blue Chip does not dispute, that only the following three transactions (none of which were matched trades) were effectuated in his Utah account: (1) Blue Chip deposited 175,000 EGLY shares in the account, (2) 26,250 shares were transferred to the individual who brought the parties together, and (3) 1,000 EGLY shares were sold for a transaction fee imposed by Wilson-Davis. There was no other account activity. There is no evidence that Furth engaged in matched trades from the state of Utah. If there were such activity it does not appear to have occurred with respect to any Utah account or with respect to any business activity in Utah.

**B. Blue Chip has not adequately demonstrated that Furth caused tortious injury in Utah.**

Blue Chip has not demonstrated that it incurred any injury in Utah. Blue Chip does not allege any presence, corporate or otherwise, in Utah. It is a Nevada corporation/resident. Importantly, even if there was an injury in Utah, Blue Chip alleges only financial injury from the asserted decline in value of EGLY shares. See Complaint ¶¶11, 31.37. Courts have held that jurisdiction cannot be predicated solely upon financial injury occurring to a Utah resident. See *Harnischfeger*, 883 F.Supp. at 613 (quoting *Hydroswift v. Louie's Boats & Motors, Inc.*, 492 P.2d 532 (Utah 1972). For a court to exercise jurisdiction based solely on financial injury

5

"would lead to the unacceptable proposition that jurisdiction could be established anywhere a plaintiff might locate." *Burt Drilling, Inc. V. Portadrill*, 608 P.2d 244, 250 (Utah 1980).

Blue Chip alleges that Furth violated the anti-fraud provisions of the Utah Securities Act, Utah Code Ann. § 61-1-1, *et. seq.*, and that those violations form an independent basis for personal jurisdiction. However, as noted above Blue Chip has provided the Court with no well-pled factual allegations that connect these alleged violations with Furth's Wilson-Davis account in Utah.

This court finds that Mr. Furth is not subject to jurisdiction under either the "transacting business" section or the "tortious injury" section of the Utah long-arm statute. Because plaintiff has not met the first part of the three-part specific jurisdiction inquiry, this Court need not reach the other two parts. However, the Court also notes that the federal due process requirement of "minimum contacts" has not been satisfied. For minimum contacts to exist, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Frontier v. Nat'l Hotel Corp.*, 675 F.Supp. 1293, 1298 (D. Utah 1987). In this case, Mr. Furth's undisputed testimony is that he was forced to open the Utah account at Plaintiff's insistence, and that he "had no choice in the matter." First Furth Aff. At ¶7. The Court finds that this does not constitute "purposefully avail[ing]" himself, and therefore the minimum contacts requirement has not been met.

## C. Venue is improper in the District of Utah and the case should be transferred to the Northern District of Ohio.

Federal courts have applied one of three tests to determine where venue is proper: "(1) the place of injury; (2) the place where the weight of contacts occurred; or, (3) the place where a

substantial part of the events giving rise to the claim occurred." *Frontier* at 1300. The Court agrees with Mr. Furth that under any of these three tests, venue should be transferred to the Northern District of Ohio. Blue Chip claims that its injuries from Furth's fraud occurred in Utah, but again it provides no factual support for this claim. Blue Chip is a Nevada corporation with its principle place of business in Las Vegas, and there is no suggestion that Blue Chip does any business in Utah. Nowhere in the complaint does Blue Chip allege that it sustained any injuries in Utah. As no injury occurred in Utah, venue is improper under the place of injury test.

Blue Chip also claims that a substantial part of the events giving rise to plaintiff's claims occurred in Utah. Blue Chip supports this claim by saying that "Furth is attempting to transfer his EGLY shares from WDCO while continuing to offer and sell such shares, thus irreparably harming the market for EGLY shares." However, as detailed above, only 1,000 shares were ever sold, and those were to Wilson-Davis for a transaction fee. This was not a matched trade that allegedly caused injury to Blue Chip. Clearly, the more substantial part of the events occurred in the Northern District of Ohio since that is where Furth lives and does business, where he executed the agreement, and where he performed all his obligations under the agreement. The Court finds that pursuant to 28 U.S.C. § 1406 this action should be transferred to the Northern District of Ohio.

The Court notes that the existence of a substantially similar case with nearly identical parties and issues pending in the Northern District of Ohio also weighs strongly in favor of transferring this case.

## IV. CONCLUSION

For the foregoing reasons Furth's Motion to Transfer Venue to the Northern District of Ohio is granted, and the case is hereby ordered transferred.

SO ORDERED.

DATED this 10th day of August, 2006.

BY THE COURT:

[signature]

DAVID SAM

SENIOR JUDGE

U.S. DISTRICT COURT