UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Douglas Furth,** | ) | **CASE NO. 1:06 CV 411** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Jonn Zanic, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This matter is before the Court upon Plaintiff's Motion for a Preliminary Injunction (Doc. 31). This case arises out of the parties' contractual relationship. For the reasons that follow, the motion is DENIED and the temporary restraining order entered is DISSOLVED.

### FACTS

Plaintiff, Blue Chip IR Group, Ltd., filed this action in state court in Utah, against defendants, Douglas Furth and Wilson-Davis Co., asserting wrongdoing associated with the parties' business relationship. According to the complaint, plaintiff is a shareholder in Ever-Glory International Group, Inc. ("EGLY"), a publicly traded company. Plaintiff sought the

1

services of Furth, who is a financial public relations specialist. Plaintiff and Furth entered into a contract pursuant to which plaintiff agreed to transfer 175,000 shares of EGLY to Furth, in exchange for certain "market awareness" services. Specifically, plaintiff claims that Furth agreed to increase the market trading volume of EGLY shares by between 50,000 and 75,000 shares per day. Pursuant to the agreement, plaintiff transferred 175,000 shares of EGLY to an account held by defendant Wilson-Davis.

According to the complaint, Furth represented that he would only engage in lawful activities. Contrary to this representation, plaintiff alleges that Furth engaged in "matched trading," in which Furth and one or more associates sold shares to each other at pre-arranged prices in order to artificially increase the market volume and share price. Plaintiff's counsel sent a letter to Furth demanding that he return the 175,000 shares of EGLY stock. Furth refused and, thereafter, plaintiff filed suit. The complaint contains five claims for relief. Count one is a claim for securities fraud in violation of Utah Code § 61-1-1(2). Count two asserts a claim for common law fraud. Count three is a claim for breach of contract. Counts four and five seek declaratory and injunctive relief.

This case was initially filed in state court in Utah. The state court granted plaintiff's request for a temporary restraining order ("TRO") preventing Furth from transferring or otherwise disposing of his shares in EGLY. Defendants removed the matter to the District of Utah, wherein the court extended the TRO until such time as the court could rule on defendants' motion to transfer this case to this district. Ultimately, the court granted defendants' motion and the matter is now pending here. Plaintiff moves for a preliminary injunction and Furth opposes the motion.

**ANALYSIS**

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions.

When ruling on a motion for a temporary restraining order or preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the relief requested; (3) whether granting the relief requested will cause substantial harm to others; and (4) whether the public interest will be served by granting the relief requested. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997); *J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 437-438 (N.D. Ohio 1999); *Crews v. Radio 1330, Inc.*, 435 F.Supp. 1002, 1005 (N.D. Ohio 1977).

A district court must make specific findings concerning each of these factors, unless analysis of fewer factors is dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). However, not all the factors need be fully established for a temporary restraining order or injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). No one factor is a prerequisite to relief; rather, they should be balanced. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). While none of the factors are given controlling weight, a preliminary injunction should not be issued where there is no likelihood of success on the merits. *Michigan State AFL-CIO*, 103 F.3d at 1249. Where the court concludes that there is no likelihood of success on the merits, it need not address the other three factors. *Id*.

**DISCUSSION**

1.      Likelihood of success on the merits

Plaintiff claims that its evidence establishes a likelihood of success on the merits. Plaintiff relies on the affidavit of its president, Azra Bailey, who avers as follows,

> [Plaintiff], has learned, in part from Furth, that he and certain of his business associates have engaged in "matched" trades for EGLY shares....  Furthermore, as is apparent from publicly available reports concerning market activity in EGLY shares, Furth's scheme has not provided the promised increases in EGLY market volume or price.

It appears that plaintiff attempts to provide additional support for this statement in a second affidavit provided by Bailey, in which he states that, "Furth admitted to John Zanic, a consultant for [plaintiff] that he utilized his network of business associates to effect "matched" trades in [EGLY] shares."

According to plaintiff, this evidence is sufficient to establish a strong or substantial likelihood of success on the merits.

In response, Furth relies on his own affidavit, in which he denies ever having engaged in "matched" trading.  In addition, Furth points out that plaintiff's factual support is alleged only "upon information and belief."  For example, in its motion, plaintiff claims that it has established a likelihood of success on the merits because "Furth, upon information and belief, engaged in "matched" trades...."  According to Furth, allegations made upon information and belief fall far short of satisfying plaintiff's burden.

Upon review, the Court agrees with Furth and finds that plaintiff fails to establish a strong or substantial likelihood of success on the merits.   In essence, plaintiff claims that Furth engaged in "matched" trading.  The only evidence plaintiff points to in support of its claim is the

4

affidavit of its president, who avers that Furth admitted its conduct to plaintiff's consultant. Assuming *arguendo* that the statement is admissible, the evidence falls fall short of establishing a likelihood of success on the merits.[1] In his own affidavit, Furth expressly denies engaging in matched trading. In the face of Furth's denial, the Court cannot say that plaintiff will likely succeed on the merits of its claims.[2] This is especially so given that plaintiff relies on the statements in the affidavit of its president only "upon information and belief."    Accordingly, this factor weighs against a finding that preliminary relief is warranted.

2.      Irreparable harm to movant

Plaintiff argues that it will suffer irreparable harm absent a preliminary injunction. According to plaintiff, if this Court does not restrain Furth, he will "dump" his shares in EGLY,

---

[1]     Plaintiff's president avers that Furth admitted his conduct to Zanic, who appears to be a consultant for plaintiff. Plaintiff argues this evidence is not hearsay because it constitutes an admission. The Court is not convinced, however, that the statement is admissible. While Furth's statement to Zanic may constitute an admission, Zanic's statement to Bailey does not appear to fall within an exception to the hearsay rule. Plaintiff also purports to rely on a letter drafted by its counsel and sent to Furth. Plaintiff points out that the letter provides, "you have now admitted to Mr. Zanic that rather than provide targeted financial public services, you have utilized your network of business associates to effect "matched" trades in EGLY shares...." This statement also appears to violate the hearsay rule. Regardless, the letter simply recounts plaintiff's position that Furth admitted his conduct to Zanic.

[2]     Bailey also avers that Furth breached the contract because "publicly available reports" demonstrate that Furth did not achieve the promised price and volume increases. Plaintiff, however, fails to point the Court to any specific report or other evidence on this issue. The Court will not *sua sponte* search financial reports in order to analyze the volume and price of EGLY shares over an unspecified period of time.

5

which will destroy the value of plaintiff's shares in that company.  Plaintiff also claims that it "believes" that Furth has few assets.[3]  As such, plaintiff argues that any money judgment awarded against Furth will go unsatisfied.  In addition, plaintiff argues in its reply brief that its reputation will somehow be damaged.

In response, Furth argues that plaintiff cannot demonstrate irreparable harm.  Moreover, Furth claims that plaintiff has no evidence that he lacks assets sufficient to withstand a money judgment in this matter.  On the other hand, Furth relies on his own affidavit, in which he avers that he has "more than sufficient assets and financial wherewithal to satisfy any judgment [plaintiff] may obtain against [him] relative to any shares of EGLY stock...."  In its reply, plaintiff relies on the affidavit of its president, who avers that he "learned that Furth has little or no cash or significant income through Furth's representations and actions."

Upon review, the Court finds that plaintiff fails to establish that it will suffer irreparable harm absent preliminary relief.  It is well settled that "a plaintiff's harm is not irreparable if it is fully compensable by money damages."  *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  According to plaintiff, the value of its shares of EGLY will decrease if Furth is permitted to "dump" his shares.  The Court finds that this harm consists of economic loss and further finds that money damages will fully compensate plaintiff in the event plaintiff succeeds on its claims.  Although plaintiff attempts to claim that Furth will be unable to satisfy any money judgment, Furth expressly avers that he has sufficient assets to withstand a money judgment. The Court finds that plaintiff simply fails to meet its burden on this issue.  In addition, the Court

---

[3] Plaintiff also argues that EGLY's viability may be impacted.  The Court finds that this is more appropriately addressed as "harm to others," in that EGLY and Blue Chip are separate entities.

6

finds that plaintiff fails to establish how its reputation will be damaged absent preliminary relief. Plaintiff neither develops nor analyzes this purported harm. In all, the Court finds that this factor weighs against the imposition of a preliminary injunction.

3. Harm to others

Although not specifically addressed in this context, plaintiff argues that EGLY and other shareholders will suffer substantial harm if Furth is permitted to sell his shares. According to plaintiff, the viability of EGLY may be affected. In addition, plaintiff argues that investors may not receive the full value for their shares and may be disinclined to purchase EGLY stock, which will hinder EGLY's ability to pursue its business objectives.

On the other hand, Furth argues that he will suffer harm in the event a preliminary injunction is granted. Furth points out that the value of his stock on the date plaintiff froze his account totaled approximately $325,000. Since that time, the value of EGLY stock has decreased substantially. The current value of Furth's shares is $90,125. Furth points out that the state court required that plaintiff post only a $20,000 bond. According to Furth, the value of the stock is likely to decrease and the bond is inadequate to cover any loss Furth may incur.

Upon review, the Court finds that this factor neither favors nor disfavors the granting of preliminary relief. Although the Court agrees that, in certain circumstances, the harm discussed by plaintiff may weigh in favor of preliminary relief, plaintiff simply fails to establish the likelihood of the harm actually occurring. Plaintiff generally claims that, in the event Furth sells his shares, there will be an "adverse" affect on the market for EGLY stock. Plaintiff, however, fails to provide any evidence supporting its contention. For example, the Court has no knowledge of the percentage ownership that Furth's shares represents. Thus, it is impossible to

analyze the impact any "dumping" would have on the market for EGLY stock.

While the Court agrees with Furth that he may suffer economic harm if the status quo is maintained, the Court finds that, standing alone, this is insufficient to preclude preliminary relief. Thus, this factor does not strongly weigh in Furth's favor. Overall, the Court finds that this factor does not favor either party.

4. Public interest

Plaintiff argues that conversion of the temporary restraining order to a preliminary injunction will serve the public interest because the public should have "peace of mind" in knowing that contracts will be enforced. The Court finds that this factor, standing alone does not warrant preliminary relief.

**CONCLUSION**

Based on a balancing of the foregoing factors, the Court finds that plaintiff is not entitled to a preliminary injunction. According, Plaintiff's Motion for a Preliminary Injunction is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/6/06